UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 23-cv-11431-RGS

PIERCE ALUMINUM COMPANY, INC.

v.

MASTEEL AMERICA CORP.

MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION TO STAY PROCEEDINGS

September 19, 2023

STEARNS, D.J.

Plaintiff Pierce Aluminum Company, Inc. (Pierce) alleges that Masteel America Corp. (Masteel) breached a contract for the sale of three fiber laser machines and then attempted to extort payment from Pierce. Eighteen days before Pierce filed this Complaint, Masteel sued Pierce in the Supreme Court of British Columbia (Canadian Proceeding) over the same contract, seeking specific performance or, in the alternative, damages. Masteel now moves to stay this case pending the outcome of the Canadian Proceeding. The court will deny the motion.

## BACKGROUND

In December of 2021, Pierce contracted to purchase three fiber laser machines from Masteel for $555,900 each.  The parties agreed that Pierce would pay for each laser in three installments:  30% with the order, 60% upon departure from Masteel, and the remaining 10% after installation and 30 days of satisfactory operation.  They also agreed that Masteel would deliver each laser separately, one in March of 2022, one in June of 2022, and the last in December of 2022.  The contract specified that "[d]elivery is critical." Compl. (Dkt. # 1), Ex. 1 at 6.  Pierce paid the 30% deposit for the three lasers upon ordering them, and paid an additional 60% of the cost of the first laser when Masteel provided notice that the laser had shipped.  Masteel did not deliver the first laser until January of 2023.[1]  Pierce claims that the laser did not operate satisfactorily, and refused to pay the outstanding balance of 10%.  Masteel has not delivered the second and third lasers, and Pierce has not paid any of the remaining installments.

On May 5, 2023, Pierce sent a letter to Masteel cancelling the contract, and requesting that Masteel retrieve the one laser that had been delivered and refund the purchase price, expenses incurred, and any losses sustained

---

[1] Masteel appears to claim delivery occurred "[i]n or around late 2022." Masteel Mot. to Stay (Dkt. # 9), Ex. 1 ¶ 8.  Regardless, delivery occurred after the contracted date.

because of Masteel's alleged breaches. Pierce reiterated the cancellation on May 10 and May 12, 2023. Masteel responded by telling Pierce to "deal with [Masteel's] lawyer." Compl. ¶ 59. On May 16, 2023, counsel for Pierce sent a letter to Masteel repeating Pierce's request and noting that he hoped to avoid "the time and expense of protracted litigation." Pierce Opp'n to Mot. to Stay (Dkt. # 10), Ex. B. After receiving no response, Pierce's counsel sent a follow-up letter on May 31, 2023. Counsel for Masteel wrote back the same day stating that she would respond to Pierce's demands as soon as possible.

Neither Masteel nor its counsel communicated any further with Pierce; instead, Masteel filed a complaint in the Supreme Court of British Columbia on June 9, 2023, claiming that Pierce had breached the parties' contract. Pierce filed this Complaint on June 27, 2023 in the District of Massachusetts. Pierce's Complaint alleges breaches of contract and express and implied warranties, as well as violation of the Massachusetts Unfair Business Practices Act (Chapter 93A). Pierce seeks declaratory and injunctive relief, treble damages and attorneys' fees, pre- and post-judgment interest, and costs.

## DISCUSSION

"Federal courts, it was early and famously said, have 'no more right to decline the exercise of jurisdiction which is given, than to usurp that which

3

is not given.'" *Spring Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013), quoting *Cohens v. Virginia*, 6 Wheat. 264, 404 (1821); *see also Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 15 (1983) (federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given to them"); *KPS & Assocs., Inc. v. Designs by FMC, Inc.*, 318 F.3d 1, 10 (1st Cir. 2003) (there is a "heavy presumption favoring the exercise of jurisdiction"), quoting *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 13 (1st Cir. 1990). "Abstention from the exercise of federal jurisdiction is the exception, not the rule." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 818 (1976) (a federal court can abstain from hearing a case with parallel state-court litigation only in "exceptional circumstances"). The decision of whether to stay a proceeding in deference to parallel litigation is "necessarily left to the discretion of the district court in the first instance." *Moses*, 460 U.S. at 19.

Masteel's motion requires the court to tread in unsettled waters. Neither the First Circuit nor the Supreme Court has addressed the issue of whether a federal trial court may (or must) abstain from exercising jurisdiction when there is a related action pending in a foreign forum. *See, e.g.*, *Rapid Pharm. AG v. Kachroo*, 180 F. Supp. 3d 96, 100 (D. Mass. 2015); *Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251-252 (D. Mass.

4

1999). In determining whether to defer to parallel foreign proceedings, U.S. courts have generally relied on a modified version of the *Colorado River* abstention factors,[2] *see, e.g.*, *Ingersoll Milling Mach. Co. v. Granger*, 833 F.2d 680, 685 (7th Cir. 1987); *Rapid Pharms. AG*, 180 F. Supp. 3d at 100-101; *Caspian Invs., Ltd. v. Vicom Holdings, Ltd.*, 770 F. Supp. 880, 884 (S.D.N.Y. 1991), and/or principles of international comity, *see, e.g.*, *Goldhammer*, 59 F. Supp. 2d at 251-252; *Turner Ent. Co. v. Degato Film GmbH*, 25 F.3d 1512, 1519-1521 (11th Cir. 1994).[3]  Whether the emphasis is

---

[2] *Colorado River* abstention permits a district court to stay or dismiss a federal proceeding when there is a substantially similar state court proceeding awaiting the outcome of the state court proceeding. *See Moses*, 460 U.S. at 28; *Glassie v. Doucette*, 55 F.4th 58, 65 (1st Cir. 2022).

[3] Where there are parallel federal actions involving the same parties with "nearly complete" overlap, "the usual practice is for the court that first had jurisdiction to resolve the issues and the other court to defer." *TPM Holdings, Inc. v. Intra-Gold Indus., Inc.*, 91 F.3d 1, 4 (1st Cir. 1996). At least one court has held that foreign proceedings should receive the same level of deference as other federal cases. *See Brinco Mining Ltd. v. Fed. Ins. Co.*, 552 F. Supp. 1233, 1240 (D.D.C. 1982). The D.C. District Court reasoned that where (1) "the alternate forum is that of Canada, a country that shares the same common law roots as our jurisprudence," so "the concerns that federalism normally presents for a diversity court are not implicated," and (2) the plaintiff – a Canadian company – sought "to use this Court's jurisdiction to circumvent proceedings it instituted *in its own country*." *Id.* The court will side with the greater weight of federal authority – all decided after *Brinco Mining* – and apply the *Goldhammer* factors. And here, a Massachusetts company seeks to litigate its rights in the Massachusetts federal court.

on the modified *Colorado Rivers* factors or international comity, the analysis is essentially the same.

As indicated, the court will apply the six factors "federal trial courts have developed . . . in determining whether to grant a stay because of parallel litigation in a foreign forum." *Goldhammer*, 59 F. Supp. 2d at 252. The *Goldhammer* factors are:

> (1) similarity of parties and issues involved in the foreign litigation; (2) the promotion of judicial efficiency; (3) adequacy of relief available in the alternative forum; (4) issues of fairness to and convenience of the parties, counsel, and witnesses; (5) the possibility of prejudice to any of the parties; and (6) the temporal sequence of the filing of the actions.

*Id.* at 252-253.

**Factor 1: Similarity of Parties and Issues Involved in the Foreign Litigation**

The first *Goldhammer* factor – the similarity of the parties and the issues involved in the foreign litigation – weighs against allowing the motion. In the Canadian Proceeding, Masteel alleges only that Pierce breached the parties' contract. Canadian Compl. ¶¶ 13-16. Here, Pierce alleges breach of contract, breach of express warranty, breach of the implied warranty of

fitness for a particular purpose, breach of implied warranty of merchantability, and violation of Chapter 93A.  Compl. ¶¶ 70-108.

Pierce notes that its Chapter 93A claim is not available to it in the Canadian Proceeding.  Pierce Opp'n to Mot. to Stay at 11-12.  Indeed, the facts that give rise to the Chapter 93A claim – Masteel purportedly "cod[ing] the Laser to cut off Pierce Aluminum's access due to the lack of final payment," and "threat[ening]" Pierce to "extort payment," Compl. ¶¶ 50, 53-54 – are wholly absent from the Canadian Complaint, *see generally* Masteel Mot. to Stay, Ex. A.  "Thus, even assuming the [Canadian Proceeding] terminate[s] in [Masteel's] favor, that outcome is not necessarily dispositive here" because "[r]egardless of how the court rules in" the Canadian Proceeding, "there undoubtedly will be additional issues to litigate in this case."[4] *ITyX Sols., AG v. Kodak Alaris, Inc.*, 2016 WL 8902595, at *5 (D. Mass. June 24, 2016) (denying stay where issue of effect of agreement governed by New York law would not be resolved in the foreign proceeding); *see also Rapid Pharms.*,

---

[4] Masteel urges the court to ignore the Chapter 93A claim because Masteel disputes the factual basis on which it rests.  Masteel Mot. to Stay at 5-6.  Masteel is of course free to dispute these allegations in a motion to dismiss the Complaint or in its answer to the Complaint.  But the court will not – and cannot – evaluate the merits of Pierce's Chapter 93A claim at this early stage.

7

180 F. Supp. 3d at 101 (refusing to abstain where foreign litigation would not address domestic plaintiff's tort and contract claims).

**Factor 2: Promotion of Judicial Efficiency**

It is possible that "both courts may be called upon to decide the same [contractual] issue[s] and decide [them] differently," which "would not serve the best interest of comity." *Rapid Pharms.*, 180 F. Supp. 3d at 101. Further, as Masteel requests a stay rather than dismissal, Pierce could return to this court at the conclusion of the Canadian Proceeding and litigate any remaining issues. *See id.* This factor accordingly weighs in favor of allowing the motion. However, the risk of duplication of parallel federal and non-federal proceedings, "standing alone, is rarely an exceptional basis that warrants a stay or dismissal of the federal action." *Elmendorf Grafica, Inc. v. D.S. America (East), Inc.*, 48 F.3d 46, 52 (1st Cir. 1995).

**Factor 3: Adequacy of Relief Available in the Alternative Forum**

As with the first *Goldhammer* factor, even if Masteel prevails on all its claims in the Canadian Proceeding, a resolution in Canada would not dispose of all Pierce's claims here. Pierce seeks treble damages and attorneys' fees pursuant to its Chapter 93A claim – relief that is unavailable in the Canadian Proceeding. *See ITyX Sols.*, 2016 WL 8902595, at *5 (finding relief inadequate because plaintiff "cannot obtain relief in the [foreign] Actions for

8

[defendant's] alleged breaches"). At any rate, Masteel does not address this factor in its motion. *See Moses*, 460 U.S. at 16; *Pullman Arms Inc. v. Healey*, 364 F. Supp. 3d 118, 123 (D. Mass. 2019) (denying request for stay where movant "has not satisfied the heavy burden of demonstrating this case permits the Court to shirk [its] obligation" to exercise jurisdiction).

**Factor 4:  Issues of Fairness to and Convenience of the Parties, Counsel, and Witnesses**

"There is likely to be substantial inconvenience regardless of the forum with respect to procuring witnesses and evidence because the parties are located in different countries." *Alopexx, Inc. v. Xenothera*, 2023 WL 3182095, at *9 (D. Mass. Apr. 28, 2023). Masteel accordingly argues that this factor "do[es] not particularly favor either side." Masteel Mot. to Stay at 6. However, Pierce argues that litigating in the Supreme Court of British Columbia would be unfair to Pierce.

Pierce alleges, and provides documentary support suggesting, that beginning on May 16, 2023, Pierce's counsel attempted to contact Masteel in the "hopes of avoiding the time and expense of protracted litigation," while cautioning that Pierce would "take whatever legal action [it] deem[ed] appropriate to recoup Pierce Aluminum's losses" should Masteel not respond. Pierce Opp'n to Mot. to Stay, Ex. B at 2. Pierce claims that Masteel did not respond for two weeks, until Pierce's counsel again contacted Masteel

9

on May 31. *Id.* at 5. Masteel's counsel responded that she would reply "as soon as possible." *Id.*, Ex. C. Pierce claims that rather than respond, Masteel "secretly raced to file a complaint in the Supreme Court of British Columbia . . . on June 9, 2023." *Id.* at 6.

"As a policy matter, courts do not want to 'deter settlement negotiations and encourage races to the courthouse.'" *Sustainable Low Maint. Grass, LLC v. Cutting Edge Sols., LLC*, 2014 WL 4656627, at *3 (D. Mass. Sept. 15, 2014), quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004). Staying this action would "reward – and indeed abet – conduct which is inconsistent with the sound policy of promoting extrajudicial dispute resolution, and conservation of judicial resources." *Davox Corp. v. Digit. Sys. Intern., Inc.*, 846 F. Supp. 144, 148 (D. Mass. 1993); *see also Holmes Grp. v. Hamilton Beach/Proctor Silex, Inc.*, 249 F. Supp. 2d 12, 16 (D. Mass. 2002) (where plaintiff in first-filed action "misleads the defendant into foregoing litigation in order to negotiate a settlement and then files suit . . . deference to a later-filed action may be appropriate"). Pierce "sent letters to [Masteel] which were ominous enough to generate a reasonable apprehension of a lawsuit, but also invited [Masteel] to address [Pierce's] concerns and attempt to avoid potentially expensive and time-consuming litigation." *Davox*, 846 F. Supp. at 148. "Rather than

10

responding to the invitation to enter into discussions to resolve the matter, as [Masteel] represented it would, [Masteel] filed this action in an evident effort to obtain a forum more convenient to it than" this district.  *Id.*

Of course, Masteel had no obligation to negotiate outside of court with Pierce.  *See, e.g.*, *Transcanada Power Mktg., Ltd. v. Narragansett Elec. Co.*, 402 F. Supp. 2d 343, 349 (D. Mass. 2005).  But Pierce reasonably believed, based on Masteel's representations that it would "present a response . . . as soon as possible," that Masteel was willing to negotiate before filing a suit. Pierce Opp'n to Mot to Stay, Ex. C.  Instead, as a "follow up to [their] recent e-mail communications," Masteel's counsel sent Pierce's counsel the Canadian Complaint.  *Id.*, Ex. D.  The letter transmitting the Canadian Complaint further suggests that Masteel sued Pierce mainly as a bargaining chip to force Pierce into a settlement.  *See id.*, Ex. D ("Despite having commenced this litigation, please be advised that our client is still willing to attempt negotiating a result if your client is willing to come to the table in good faith.")  This factor accordingly weighs against allowing the motion.

**Factor 5:  Possibility of Prejudice to Any of the Parties**

The possibility of prejudice to Pierce weighs slightly against allowing the motion.  Masteel concedes that there "is no glaring issue of fairness or prejudice that would result to either side by litigating in one forum as

11

opposed to the other." Masteel Mot. to Stay at 6. Pierce claims that it would be prejudiced if a stay is granted because it would be "forced to expend time and money to litigate a jurisdictional issue[5] in the Supreme Court of British Columbia only to return to this Court to litigate its claims." Pierce Opp'n to Mot. to Stay at 15. It is not clear to the court how denying the stay here will save Pierce from expending resources to litigate the jurisdictional issue in the Canadian Proceeding. However, staying the action here would delay Pierce's attempts to vindicate at least its Massachusetts statutory rights for an indefinite amount of time. *See ITyX Sols.*, 2016 WL 8902595, at *6.

**Factor 6: Temporal Sequence of the Filing of the Actions**

This temporal sequence of filing does not weigh in favor of either party. This factor is motivated by a concern that the first-filed foreign litigation will proceed to trial while the domestic proceeding is still in early stages. *Compare Goldhammer*, 59 F. Supp. 2d at 255 (granting stay where foreign litigation was filed one year before domestic case and discovery was underway in foreign litigation), *with ITyX Sols.*, 2016 WL 8902595, at *6 (denying stay where "a decision [in the foreign proceeding] is not

---

[5] The parties are currently briefing a jurisdictional issue in the Canadian Proceeding because Pierce contends the Supreme Court of British Columbia does not have jurisdiction over it. Pierce Opp'n to Mot. to Stay at 13.

imminent"). As noted, Pierce filed this case less than one month after Masteel filed the Canadian Proceeding. Neither party argues that the Canadian Proceeding is anywhere close to trial. While this factor would normally "weigh[] somewhat in favor of granting a stay" because Masteel filed first, *see Alopexx*, 2023 WL 3182095, at *9, Pierce's allegations give the court pause in rewarding Masteel's pre-filing conduct. Accordingly, this factor does not weigh in favor of either party.

## CONCLUSION

On balance, and given the heavy presumption that the court should not surrender jurisdiction absent exceptional circumstances, the *Goldhammer* factors weigh in favor of denying Masteel's motion to stay. Four of the factors weigh against staying the case, one is neutral, and just one weighs in favor of staying the case. That one factor – judicial efficiency – is not enough, standing alone, to warrant abdication of the court's duty to hear this case.

## ORDER

For the foregoing reasons, Masteel's motion to stay is <u>DENIED</u> without prejudice.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE